UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MIGUEL ANGEL MEDEL LOPEZ,

                    Plaintiff,

        v.

CLALLAM COUNTY, et al.,

                    Defendants.

CASE NO. 3:22-cv-05525-TMC-DWC

REPORT AND RECOMMENDATION

Noting Date: **May 3, 2024**

Plaintiff Miguel Angel Medel Lopez proceeds *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. *See* Dkts. 3, 11. The District Court has referred this action to United States Magistrate Judge David W. Christel.

Before the Court is Defendants' motion for summary judgment requesting dismissal of all Plaintiff's claims. Dkt. 30. The Court interprets Plaintiff's amended complaint to assert claims related to the conditions of his confinement, failure to protect and use of excessive force by jail staff, and inadequate medical treatment during his pretrial detention. Plaintiff has not filed a response to the motion for summary judgment. *See* Docket. After reviewing the relevant record, the Court finds Plaintiff has failed to rebut Defendants' showing that no genuine issue of

REPORT AND RECOMMENDATION - 1

1 material fact remains as to Plaintiff's claims. The Court, therefore, recommends Defendants'

2 motion for summary judgment (Dkt. 30) be granted and Plaintiff's claims be dismissed with

3 prejudice.

4 **I.     Procedural Background**

5          Plaintiff is a state prisoner currently confined at Coyote Ridge Corrections Center

6 ("CRCC"). Dkt. 11. He asserts claims arising out of his pretrial detention at the Clallam County

7 Jail in Port Angeles, Washington, from November 2019 to November 2020. *Id.*

8          Plaintiff's March 9, 2023, amended complaint asserts multiple violations of his

9 constitutional rights due to substandard conditions of confinement, deficient medical care, and

10 mistreatment by jail staff while he was confined at the Clallam County Jail. *See id.* The Court

11 directed service of Plaintiff's amended complaint on Defendants Clallam County Jail, Sandra

12 Waterhouse, Correctional Officer Morgan, Correctional Officer Hutchee (hereafter "Hutchin"),

13 Correctional Officer Slowee (hereafter "Slowey"), and Correctional Officer Peens (hereafter

14 "Pence"). Dkt. 12. The Court noted that it was unable to direct service on the Defendant

15 identified only as "Medical N[u]rs[e]" because Plaintiff had not provided sufficient information

16 to identify this individual. *Id.*

17          When Plaintiff initiated this case, he filed requests for appointment of counsel and a

18 Spanish-language interpreter to assist him in communicating with the Court. Dkts. 1-3, 1-4, 6, 7.

19 The Court denied these motions without prejudice. Dkt. 4 at 11. On August 16, 2023, after

20 Defendants filed an answer to Plaintiff's complaint and the Court issued a pretrial scheduling

21 order, Plaintiff filed a second motion for appointment of counsel. *See* Dkts. 17–26. He claimed

22 he lacked the legal knowledge and skills necessary to research, investigate, and argue his case.

23 Dkt. 26. He also indicated he did not know how to collect necessary evidence for his case,

24

1    specifically mentioning his medical records from Clallam County Jail. *Id.* at 4–5. The Court

2    denied this motion without prejudice, explaining that Plaintiff had not demonstrated the

3    extraordinary circumstances required to appoint counsel in a § 1983 case. Dkt. 28. The Court

4    also acknowledged Plaintiff's claimed problems obtaining discovery and directed defense

5    counsel to assist him in obtaining relevant records within Defendants' control. *Id.*

6        No further filings were submitted in this case until January 5, 2024, when Plaintiff filed

7    an affidavit regarding his deposition by Defendants' counsel, Sarah Tatistcheff. Dkt. 29. He

8    alleges he received a letter from Ms. Tatistcheff a few days before his deposition telling him that

9    she was coming, but he did not have time to review all the paperwork that she sent. *Id.* at 2.

10   When Ms. Tatistcheff arrived at CRCC on November 9, 2023, Plaintiff alleges he told her he did

11   not want to answer any questions without an attorney. *Id.* He claims, "she insisted on asking

12   questions even when I told her that English is my second language and [that] I was [in] pain

13   because of possible kidney stones." *Id.* He states, "I was told that a reporter was there to keep

14   things fair but I did not get her name and I don't know what is going to happen next." *Id.* at 3.

15   Plaintiff admits that the answers he gave to Ms. Tatistcheff's questions were correct except that

16   he refused to repeat foul language allegedly used by Defendants. *Id.* Plaintiff also states he has

17   "not been doing well mentally" since receiving a phone call from Mexico in November telling

18   him that his mother had suffered a stroke and had become blind and paralyzed. *Id.* at 2.

19       On January 12, 2024, Defendants filed a motion for summary judgment requesting

20   dismissal of all claims. Dkt. 30. In support of the motion, they submitted a declaration of Don

21   Wenzl, Chief Corrections Deputy of the Clallam County Sheriff's Office and records custodian

22   for the Clallam County Jail, with attached exhibits of Plaintiff's administrative and medical

23

24

records during his incarceration at the jail from November 2019 to November 2020. *See* Dkts. 31, 36, 38.

Defendants' counsel, Ms. Tatistcheff, also submitted a declaration regarding Plaintiff's deposition. *See* Dkt. 32. Ms. Tatistcheff states she sent Plaintiff a letter on October 23, 2023, informing him that Defendants would be sending him copies of his medical records and that his deposition would be scheduled in November. Dkts. 32 at 1–2; 32-1. She enclosed copies of Federal Rules of Civil Procedure 33 and 34, which concern discovery requests, and a Black's Law Dictionary article entitled, "What is a Deposition?" Dkts. 32 at 1–2; 32-1. On October 31, 2023, Ms. Tatistcheff asserts she sent Plaintiff another letter informing him that his deposition was scheduled for November 9, 2023. Dkts. 32 at 2; 32-2. The deposition took place as scheduled in the presence of a court reporter. Dkts. 32 at 2; 32-3. Ms. Tatistcheff states, "at no time before, during, or after the deposition did Mr. Lopez state that he would not answer my questions regarding this lawsuit because he had not retained and did not have a lawyer present." Dkt. 32 at 2. She sent Plaintiff a copy of the deposition transcript on January 9, 2024. Dkts. 32 at 2; 32-4. Ms. Tatistcheff avers that her office has received no correspondence or discovery requests from Plaintiff since the beginning of this case. Dkts. 30 at 4; 32 at 2.

Plaintiff did not respond to the motion for summary judgment, nor has he filed anything further in this case since filing his affidavit on January 5, 2024. *See* Docket.

## II.    Legal Standards

### A.  Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not

1   defeat an otherwise properly supported motion for summary judgment; the requirement is that

2   there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–

3   48 (1986) (emphasis in original). A dispute is genuine when the evidence would allow "a

4   reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 248. Material facts are those

5   that might affect the outcome of the suit under the governing law. *Id.* Accordingly, the central

6   issue is "whether the evidence presents a sufficient disagreement to require submission to a jury

7   or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

8       The moving party bears the initial burden to show "that there is an absence of evidence to

9   support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where

10  the moving party does not bear the burden of persuasion at trial, it can carry its initial burden at

11  summary judgment by presenting evidence that negates an essential element of the nonmoving

12  party's case or by establishing that the nonmovant lacks the quantum of evidence needed to

13  satisfy its burden at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102

14  (9th Cir. 2000).

15      If the moving party meets this initial responsibility, the burden then shifts to the

16  nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus.*

17  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). To do so, the nonmoving party must

18  present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford*

19  *Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party "cannot defeat

20  summary judgment with allegations in the complaint, or with unsupported conjecture or

21  conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003);

22  *see also Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*,

23  713 F.3d 1187, 1195 (9th Cir. 2013) ("An unverified complaint cannot form the basis of

24

1    evidence considered at summary judgment.") (citing *Moran v. Selig*, 447 F.3d 748, 759–60 (9th

2    Cir. 2006)).

3    　　　　When ruling on a motion for summary judgment, the Court must draw all reasonable

4    inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co.*, 475 U.S. at

5    587. The Court may not weigh the evidence or make credibility determinations at the summary

6    judgment stage. *Anderson*, 477 U.S. at 249, 255. The Court construes *pro se* complaints liberally,

7    particularly in civil rights cases. *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014).

8    "However, a liberal interpretation of a *pro se* civil rights complaint may not supply essential

9    elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

10   1992) (cleaned up). The Court need not, and will not, "scour the record in search of a genuine

11   issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v.*

12   *Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

13   　　　　Even where the nonmoving party fails to respond to the summary judgment motion, the

14   Court cannot grant the motion automatically. *See Heinemann v. Satterberg*, 731 F.3d 914, 916–

15   17 (9th Cir. 2013); *see also* Local Rules W.D. Wash. LCR 7(b)(2) ("*Except for motions for*

16   *summary judgment*, if a party fails to file papers in opposition to a motion, such failure may be

17   considered by the court as an admission that the motion has merit.") (emphasis added). Rather,

18   the Court may grant summary judgment only if "the motion and supporting materials—including

19   the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P.

20   56(e)(3); *see also Heinemann*, 731 F.3d at 917 ("As amended, Rule 56 requires district courts to

21   assess whether the motion and supporting materials entitle the movant to summary judgment . . .

22   even if there is a complete failure to respond to the motion.") (cleaned up). If the non-moving

23

24

party fails to address an assertion of fact in the summary judgment motion, the Court may

consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

B. 42 U.S.C. § 1983

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

violation of rights protected by the Constitution or created by federal statute, and (2) the

violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*,

947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is to identify the specific

constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy

the second prong, a plaintiff must allege facts showing how individually named defendants

caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v.*

*IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

**III.    Statement of Facts**

A. Jail Conditions

After his arraignment in November 2019, Plaintiff was placed into H Unit at Clallam

County Jail. Dkt. 32-3 at 12. In H Unit, he alleges he was placed in a four-person cell, but that it

was housing six inmates with two people sleeping on the floor in padded "boats." *Id.* at 12–13.

However, in a recorded phone call on December 1, 2019, Plaintiff stated he was sharing his cell

with three other people. Dkt. 31-4 at 3–4. Plaintiff alleges he was bullied and threatened by other

inmates and officers in H Unit. Dkt. 32-3 at 13. Plaintiff asked to be moved to a different unit. *Id.*

at 18. In his complaint, Plaintiff alleged the other inmates told him to move out of the unit but

told him not to tell officers why he needed to move. Dkt. 11 at 14.

In late December 2019, Plaintiff was moved to C Unit. Dkt. 32-3 at 19. He alleges he was

placed in a two-person cell, but that it was housing four inmates with two sleeping on the floor in

1  "boats." *Id.* Plaintiff remained in C Unit for only a few days before asking to be moved again. *Id.*

2  at 19–21. He alleges that one of his cellmates in C Unit threatened him and told him to move. *Id.*

3  at 20–21. Plaintiff admits his written request to be moved did not disclose the threats, but states

4  he told one of the officers that his cellmate was threatening him. *Id.* at 19–20. In his written

5  request, Plaintiff asked to be moved to solitary at least until he could see his lawyer or until his

6  cellmate was moved. Dkts. 31 at 1; 31-1 at 4. The request was received on January 5, 2020, and

7  notes that Plaintiff was "moved to N tank" the same day. Dkts. 31 at 1–2; 31-1 at 4; 38 at 21.

8      In N Unit, Plaintiff was placed on administrative segregation, meaning that each cell

9  contained only one inmate. Dkts. 31 at 1–2; 32-3 at 20; 38 at 21. He alleges this was "the dirtiest

10 tank," with dirt and rust on the tables and white stains in the shower from soap residue. Dkt. 32-3

11 at 21–22. He also alleges that the floor and walls of his cell had red stains that looked like blood.

12 *Id.* at 22. Plaintiff states he asked for cleaning supplies verbally and then submitted a kite with

13 the request but did not receive the supplies for two or three days. *Id.* at 23. Plaintiff's written

14 request for cleaning supplies was received on January 6, 2020, and appears to show that he was

15 given them the same day. Dkts. 31 at 1; 31-1 at 5.

16     Plaintiff also alleges N Unit was cold and condensation built up on the walls during the

17 night near where he slept, which caused his blankets to become wet. Dkts. 11 at 17; 32-3 at 26–

18 27. He states he complained verbally about the condensation but did not make a written

19 complaint. Dkt. 32-3 at 27. He does not claim to have made a written request for more blankets,

20 but states the officers told him he was not allowed more blankets. *Id.*

21     While he was in N Unit, Plaintiff alleges sewage water seeped up through the drains at

22 night and flooded the entire unit. *Id.* at 26. Plaintiff states he was sleeping on the floor and woke

23 up wet from the flooding. *Id.* at 26–27. He states the water remained on the floor and he did not

24

receive dry clothes until late afternoon the next day. *Id.* at 27–28. He remembers his cell flooding again the next night, but these are the only two incidents he remembers. *Id.* at 28–29. Some of the other inmates told him that flooding occurred when inmates flushed things down the toilet that were not permitted, and Plaintiff stated he had flushed paper down the toilet before he was instructed not to do so. *Id.*

Plaintiff also alleges that "a couple times" he was not allowed out of his cell for a period of four to five days. *Id.* at 30–31. From January 6, 2020, to May 25, 2020, the out-of-cell activity log maintained by the jail shows three instances of four to five days between entries. Dkt. 31-2 at 5–9. Plaintiff states he once asked a sergeant why he was not being let out of his cell, but he did not make a specific written complaint about not being let out of his cell often enough. Dkt. 32-3 at 31–32.

Plaintiff alleges he sent multiple kites to jail staff asking to be moved out of segregation, but his requests were ignored. *See* Dkt. 11 at 17; 32-3 at 25–26, 32. Jail records indicate Plaintiff submitted his first written request to be moved from the segregation unit on January 8, 2020, three days after he was transferred from C Unit. Dkt. 31-1 at 7. Plaintiff wrote that he made a mistake by asking to be put in segregation because he did not know that he would be subject to other restrictions like not having access to television. *Id.* He asked to be reclassified to a lower risk level but acknowledged that he would "be ok" spending the time required in segregation. *Id.* The request form does not indicate a response. *Id.*

Plaintiff again asked to be transferred on January 15, 2020, and the written form indicates that the responding officer "explained [the] process" to him. *Id.* at 8. Plaintiff's next written request was submitted on February 3, 2020, alleging that he had not been able to shower, use the phone, or visit the day room for the last three days. *Id.* at 9. The out-of-cell activity log shows

1   visits to the day room on January 29, 2020, and February 3, 2020, as well as visitation on

2   February 2, 2020. Dkt. 31-2 at 5.

3          Plaintiff next requested a transfer on April 8, 2020. Dkt. 31-1 at 11. The request was

4   denied because Plaintiff was "not able to get along [with] inmates and [hadn't] behaved so well

5   in segregation." *Id.* Plaintiff had received two infractions since his previous request, the first on

6   February 8, 2020, for antagonizing another inmate, and the second on March 23, 2020, for

7   threatening a deputy. Dkt. 38 at 9, 20–21. Plaintiff again asked to be moved out of segregation

8   on April 15, 2020, and was denied with the explanation that he had been "causing problems" in

9   segregation and would not be moved out until he proved he could behave. Dkt. 31-1 at 12. A

10  request on May 4, 2020, was also summarily denied. *Id.* at 13.

11         Plaintiff was moved out of segregation in May 2020, and states he was placed in an

12  observation holding cell for seven days before being placed back in H Unit. Dkt. 11 at 19.

13  Plaintiff alleges he was assaulted by another inmate in H Unit but admits he did not report the

14  incident. Dkts. 11 at 19; 32-3 at 57–58.

15         B.   Medical Care

16         Plaintiff claims he began having stomach pain soon after he was arrested, and he sought

17  medical care from the jail in December 2019. Dkts. 11 at 32; 32-3 at 44–45. In his complaint,

18  Plaintiff wrote that he was not taken to the infirmary for two weeks after he submitted a written

19  request to see a doctor, but he stated at his deposition that he did not remember how soon he was

20  seen after he submitted the request. Dkts. 11 at 32; 32-3 at 45. Plaintiff stated the doctor gave

21  him MiraLAX and told him to drink more water. Dkt. 32-3 at 48. After receiving an ultrasound

22  and stool testing, Plaintiff stated he was prescribed antibiotics, and the stomach pain went away.

23  *Id.* at 49–50.

24

1    Plaintiff's medical records from the jail indicate he submitted requests for medical

2  attention regarding abdominal pain on January 14, 2020, and again on February 2, 2020. Dkt. 36

3  at 194, 197. His vital signs were recorded during encounters on January 16, 2020, January 21,

4  2020, January 28, 2020, and February 2, 2020. *See id.* at 118–21, 124–25. Plaintiff's records

5  show normal results from tests of blood and urine samples collected on January 22, 2020. *Id.* at

6  62–63. On February 12, 2020, Plaintiff underwent an ultrasound of his abdomen, which showed

7  no evidence of abnormality. *Id.* at 222–23.

8    On February 18, 2020, a sample of Plaintiff's stool was collected, which returned a

9  positive result for H. pylori.[1] *See id.* at 56, 239. On February 25, 2020, he was prescribed a

10  course of antibiotics to address the H. pylori infection. *Id.* at 39–40. Testing for H. pylori was

11  repeated with negative results on April 12, 2020, and July 2, 2020. *Id.* at 34–35, 56–57, 334.

12    Plaintiff states he was diagnosed with herpes after experiencing genital discomfort in

13  May 2020 but claims the jail doctor said he could not give him any treatment. Dkt. 11 at 35. He

14  states he did not receive any treatment to help with the sores. Dkt. 32-3 at 51–52. On June 27,

15  2020, Plaintiff submitted a kite complaining of trouble urinating and sores. Dkt 36 at 175.

16  Plaintiff's medical records show he was seen by medical staff for penile lesions on July 1, 2020,

17  and was prescribed an antiviral medication. *Id.* at 23–24. Testing returned a positive result for

18  herpes. *Id.* at 57. At a follow-up appointment on July 9, 2020, he reported the lesions were

19  improving but not completely resolved and was prescribed a higher dosage of the medication. *Id.*

20  at 21–22.

21

22  [1] "Helicobacter pylori (H. pylori) is a type of bacteria that causes infection in the stomach. . . . H. pylori usually does not cause symptoms. But it can break down the inner protective coating in some people's stomachs and cause

23  inflammation. This can lead to gastritis or a peptic ulcer. . . . If you do have a peptic ulcer, the treatment is with a combination of antibiotics and acid-reducing medicines. You will need to be tested again after treatment to make

24  sure the infection is gone." Nat'l Libr. of Med., *Helicobacter Pylori Infections*, MedlinePlus, https://medlineplus.gov/helicobacterpyloriinfections.html (last updated May 5, 2021).

1

IV.    **Discussion**

2    Defendants contend summary judgment in their favor is proper because no genuine issue of

3    material fact exists regarding any of Plaintiff's claims. Dkt. 30. They argue Plaintiff has not

4    demonstrated any violation of his constitutional rights. *Id.* at 14. Because Plaintiff has not filed a

5    response in opposition to Defendants' motion,[2] the Court considers each fact raised in the motion

6    for summary judgment as undisputed. *See* Fed. R. Civ. P. 56(e)(2); *Heinemann*, 731 F.3d at 917.

7    It is undisputed that Plaintiff was being detained on charges for which he had not yet

8    been convicted during the time period relevant to his claims. *See* Dkts. 11; 31 at 2; 38 at 1.

9    "[P]retrial detainees . . . possess greater constitutional rights than prisoners." *Stone v. City of San*

10   *Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 535,

11   (1979)). Both convicted prisoners and pretrial detainees are "entitled to 'adequate food, clothing,

12   shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107

13   F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)),

14   *overruled on other grounds by Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008). However,

15   while convicted prisoners are protected from cruel and unusual punishment by the Eighth

16   Amendment, "constitutional questions regarding the circumstances of [pretrial detainees']

17   confinement are properly addressed under the due process clause of the Fourteenth

18   Amendment." *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1043 (9th

19   Cir. 2016) (cleaned up). Under the due process clause, pretrial detainees may not be subjected to

20   punishment because they have not been found guilty of any crime. *Bell*, 441 U.S. at 535–36.

21   The Court evaluates a pretrial detainee's Fourteenth Amendment claims regarding

22   conditions of confinement, failure to protect, and deficient medical care under an objective

23

24   ───────────

[2] The Court notes that Plaintiff's complaint was not sworn under penalty of perjury. *See* Dkt. 11 at 39.

REPORT AND RECOMMENDATION - 12

deliberate indifference standard. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070–71 (9th Cir. 2016) (citing *Kingsley v. Hendrickson*, 576 U.S. at 389 (2015)); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1123–25 (9th Cir. 2018). The elements of such a claim against an individual officer are: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Castro*, 833 F.3d at 1071; *see also Gordon*, 888 F.3d at 1124–25. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Castro*, 833 F.3d at 1071 (cleaned up). Under this standard, a pretrial detainee asserting a due process claim against a jail official must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

A.  Conditions of Confinement

In assessing conditions of confinement for pretrial detainees, the Court considers whether the conditions amount to punishment, causing harm or disability significantly exceeding or independent of the inherent discomforts of confinement, or whether they merely result from some legitimate governmental purpose. *See Doe v. Kelly*, 878 F.3d 710, 714, 720 (9th Cir. 2017). A "*de minimus* level of imposition" is insufficient to state a constitutional violation. *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

1

#### 1. *Overcrowding*

2

Plaintiff claims H Unit and C Unit were overcrowded because his cell in each unit housed

3

two extra inmates and "tensions were high." Dkt. 11 at 13–15. He states he was subjected to

4

verbal abuse, threats, and intimidation by his cellmates in this environment. *Id.*

5

The Supreme Court has found that "double celling," or housing two inmates in a single

6

cell, did not constitute cruel and unusual punishment when it did not lead to deprivations of

7

essential food, medical care, or sanitation; increase violence among inmates; or create other

8

conditions intolerable for prison confinement. *Rhodes v. Chapman*, 452 U.S. 337, 349, (1981).

9

Although Plaintiff claims he was bullied by his cellmates and intimidated into requesting

10

transfers, he does not present any facts connecting this alleged mistreatment to the crowded

11

living situation. Rather, he contends the other inmates called him names and made racist

12

comments toward him. Also, as Defendants point out, Plaintiff was subsequently moved into a

13

single-occupancy cell at his own request. Plaintiff has not alleged sufficient facts to show a

14

violation of his rights on this claim.

15

#### 2. *Administrative Segregation*

16

Plaintiff contends his rights were violated when he was placed in segregation for five

17

months and his requests to be transferred were ignored. The record shows Plaintiff initially

18

requested placement in segregation because of conflicts with his cellmates and was informed that

19

this placement was "necessary for your safety and well-being and the safe and orderly operation

20

of this facility." Dkt. 38 at 22. The responses to Plaintiff's requests to be transferred out of

21

segregation indicate ongoing interpersonal issues with other inmates. "[T]he effective

22

management of the detention facility once the individual is confined is a valid objective that may

23

justify imposition of conditions and restrictions of pretrial detention and dispel any inference that

24

such restrictions are intended as punishment." *Bell*, 441 U.S. at 540. Plaintiff has not presented

any evidence that his placement in segregation was intended as a punishment rather than

ordinary management of the jail. Accordingly, he has not alleged sufficient facts to show a

violation of his rights on this claim.

### 3.  *Sanitation*

Plaintiff claims the conditions in the jail, particularly in N Unit, were unconstitutionally

unsanitary. Specifically, he alleges his cell was dirty when he moved in, and he was not given

cleaning supplies in a timely fashion. He also contends his cell flooded twice.

A severe or prolonged lack of sanitation may amount to a constitutional violation. *See*

*Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995).

However, the Constitution "does not mandate comfortable prisons[.]" *Rhodes*, 452 U.S. at 349.

Conditions of confinement "may be, and often are, restrictive and harsh[.]" *Morgan v.*

*Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Rhodes*, 452 U.S. at 347). "Not every

disability imposed during pretrial detention amounts to 'punishment' in the constitutional

sense[.]" *Bell*, 441 U.S. at 537.

The record shows Plaintiff was given cleaning supplies the same day he requested them

in writing. When the entire unit flooded overnight, Plaintiff stated the water was removed and he

received dry clothes the next day. These facts do not demonstrate a severe or prolonged lack of

sanitation or any harm outside of the inherent discomforts of confinement. Plaintiff does not

claim to have made written complaints about condensation in his cell or to have made a written

request for additional blankets. He does not demonstrate an express intent to punish or identify

objective facts indicating the "challenged governmental action [was] not rationally related to a

legitimate governmental objective or that it [was] excessive in relation to that [objective]."

REPORT AND RECOMMENDATION - 15

1  *Kingsley*, 576 U.S. at 397–98. These allegations are not sufficient to show an infringement of his

2  constitutional rights on this claim.

3             4.  *Verbal Harassment*

4       Plaintiff generally alleges Defendants Slowey, Waterhouse, Morgan, Hutchin, and Pence

5  subjected him to verbal abuse and derogatory language, threats, insults, and racist comments.

6  Dkt. 11 at 24, 27–30. He also alleges certain specific interactions that he claims violated his

7  constitutional rights.

8       In November 2019, Plaintiff claims Defendant Slowey and another unnamed officer took

9  him into the hallway where there were no cameras and told him to sign a paper. Dkts. 11 at 21–

10  22; 32-3 at 14. Plaintiff's complaint alleged they threatened to pepper spray him if he refused to

11  sign. Dkt. 11 at 22. At his deposition, Plaintiff stated Defendant Slowey never said he would

12  pepper spray Plaintiff, but Plaintiff felt the threat was implied because Defendant Slowey had his

13  hand on his belt. Dkt. 32-3 at 15–16. Plaintiff stated Defendant Slowey did not explain the

14  paperwork and Plaintiff could not read English at the time, but he signed the papers. *Id.* at 14.

15       While Plaintiff was experiencing stomach pain, he alleges Defendant Slowey withheld

16  medicine from him. *Id.* at 38–39. He stated he missed medicine rounds on one occasion because

17  he was sleeping, and Defendant Slowey told him he could not have his medicine because he

18  missed rounds. *Id.* at 38. He alleges Defendant Slowey told him he had no rights, which he found

19  frightening. *Id.*

20       During November 2019, Plaintiff alleges that Defendant Waterhouse refused to accept his

21  bail and said he was not to be let out of jail even if he paid his bail. Dkts. 11 at 22–23; 32-3 at

22  18–19. He also states she told him she was not going to let him out of segregation and told him

23  to go to Mexico if he wanted rights. Dkts. 11 at 23; 32-3 at 36–38.

24

1

Plaintiff alleges Defendant Morgan intimidated him and forced him to sign papers when

2

he was taken for the abdominal ultrasound in February 2020. Dkts. 11 at 25–26; 32-3 at 40.

3

Plaintiff states he was not told that he was being taken out of the jail for medical treatment. Dkts.

4

11 at 25–26; 32-3 at 40. He alleges Defendant Morgan told him to sign a form that was written in

5

English and said if he refused to sign, he was refusing medical attention. Dkts. 11 at 25–26; 32-3

6

at 40. Plaintiff signed the papers and received the abdominal ultrasound. Dkt. 32-3 at 41.

7

Plaintiff states he felt Defendant Hutchin was intimidating and "a bully," and states he

8

called him names and laughed at him. Dkt. 32-3 at 33–34. He alleges Defendant Pence

9

responded to his request to speak with a sergeant by telling him he had no rights and, "If you

10

want rights, go back to Mexico." *Id.* at 34.

11

Racial slurs and other verbal abuse—standing alone—do not violate a prisoner's

12

constitutional rights. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) ("As for being

13

subjected to abusive language . . . verbal harassment or abuse . . . is not sufficient to state a

14

constitutional deprivation under 42 U.S.C. § 1983."), *abrogated on other grounds by Shakur v.*

15

*Schriro*, 514 F.3d 878 (9th Cir. 2008). Although Defendants' alleged treatment of Plaintiff

16

appears distressing, Plaintiff does not allege specific facts showing that Defendants' actions rose

17

to the level of "'punishment' in the constitutional sense." *See Bell*, 441 U.S. at 537. Even if these

18

conditions were harsh, unpleasant, or frightening, Plaintiff has not shown this conduct violated

19

his constitutional rights.

20

B.  Failure to Protect

21

The Court interprets Plaintiff's complaint to allege a violation of his constitutional rights

22

for failure to protect him from his cellmates in H Unit and C Unit.

23

24

1    Pretrial detainees have a due process right to be free from violence from other inmates.

2 *See Castro*, 833 F.3d at 1067. But Plaintiff must show objective deliberate indifference by

3 individual Defendants to make out a failure to protect claim under the Fourteenth Amendment.

4 *See id.* at 1070–71; *Gordon*, 888 F.3d at 1124–25.

5    Although he alleges he was bullied and threatened by his cellmates, Plaintiff admits that

6 he did not inform jail officials of these circumstances. *See* Dkts. 11 at 11, 14, 19; 32-3 at 19–20,

7 60. He has not demonstrated that a reasonable officer in any Defendant's circumstances should

8 have known his cell assignment placed him at risk of serious harm. Accordingly, Plaintiff has not

9 shown Defendants failed to protect him from harm in violation of his constitutional rights.

10    C. Medical Care

11    Plaintiff also contends he received insufficient medical care while detained at Clallam

12 County Jail.

13    "Individuals in state custody have a constitutional right to adequate medical treatment."

14 *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Again, "claims for violations

15 of the right to adequate medical care brought by pretrial detainees against individual defendants

16 under the Fourteenth Amendment must be evaluated under an objective deliberate indifference

17 standard." *Gordon*, 888 F.3d at 1124–25 (cleaned up). "'[M]ere lack of due care'" is not enough;

18 "the plaintiff must 'prove more than negligence but less than subjective intent—something akin

19 to reckless disregard.'" *Id.* (quoting *Castro*, 833 F.3d at 1071).

20    Here, the record indicates that Plaintiff received testing and treatment to address both his

21 H. pylori infection and herpes symptoms. Plaintiff was seen by a provider two days after he first

22 submitted a written report of abdominal pain, and the record shows blood, urine, and stool

23 testing, as well as ultrasound imaging, took place over the following month. Once the H. pylori

24

infection was diagnosed, Plaintiff was prescribed antibiotics, and follow-up testing indicated the infection was resolved. Similarly, although Plaintiff alleges he was given no treatment after being diagnosed with herpes, the record shows he was seen by a medical provider and prescribed antiviral medication three days after submitting a written complaint about his symptoms. At a follow-up appointment, he reported to his provider that his symptoms were improving.

Plaintiff has made only conclusory allegations of deliberate indifference to his medical needs. He has not presented any evidence of objectively unreasonable conduct by any Defendant in addressing his medical concerns. Accordingly, Plaintiff has not shown any violation of his constitutional rights on this claim.

D.  Excessive Force

Although Plaintiff framed many of his claims against individual Defendants as excessive force claims, he only alleged one instance involving use of physical force. Plaintiff claims that Defendant Morgan placed handcuffs on him too tightly and refused to loosen them when Plaintiff complained of pain. Dkts. 11 at 27; 32-3 at 81. He states another officer loosened the handcuffs. Dkts. 11 at 27; 32-3 at 81. Plaintiff contends this incident occurred on "the day [he] was being transfer[red] to Shelton, WA" in November 2020. Dkt. 11 at 27. This incident took place after his conviction, when he was being transferred to Washington Corrections Center in Shelton, Washington. *See* Dkt. 38 at 12.

Because this incident took place post-conviction, the Eighth Amendment's prohibition of cruel and unusual punishment applies. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022) ("After conviction, 'the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 327,

1    (1986)). "[S]ubjective intent is critical in an Eighth Amendment analysis. More than *de minimis*

2    force applied for no good faith law enforcement purpose violates the Eighth Amendment."

3    *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 797 (9th Cir. 2018).

4            As Defendants point out, Plaintiff did not allege any injury from the incident of tight

5    handcuffs. *See* Dkt. 30 at 12. He also states another officer loosened the handcuffs. Accordingly,

6    Plaintiff has not submitted evidence to rebut Defendants' showing that any use of force by

7    Defendant Morgan was *de minimus* and therefore does not rise to the level of a constitutional

8    violation.

9            E.    Remaining Claim

10           Plaintiff's complaint also includes a brief claim that the circumstances surrounding his

11   arrest violated the Fourth Amendment. Dkt. 11 at 11–12. He does not allege that any of the

12   named Defendants were involved in his arrest, nor has he provided any factual support for this

13   claim. This is insufficient to show a violation of Plaintiff's constitutional rights.

14           Plaintiff has failed to rebut Defendants' showing that there is no genuine dispute of

15   material fact as to any of his claims. The undisputed facts in the record do not establish any

16   violation of Plaintiff's constitutional rights.

17   **V.    Conclusion**

18           For the above stated reasons, the Court recommends Defendants' Motion for Summary

19   Judgment (Dkt. 30) be GRANTED.

20           Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

21   shall have fourteen (14) days from service of this report to file written objections. *See also* Fed.

22   R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

23   *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of

24

those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012). Accommodating the time limit imposed by Federal Rule of Civil Procedure 72(b), the Clerk is directed to set the matter for consideration on **May 3, 2024**, as noted in the caption.

Dated this 16th day of April, 2024.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21